## No. 12,114.

SMART, ET AL. *v.* RADETSKY, ET AL.

and

HAZELTON, ET AL. *v.* RADETSKY, ET AL.

Decided May 27, 1929.

MR. L. WARD BANNISTER, MR. WILLIAM T. WOLVINGTON, MR. KENNETH M. WORMWOOD, MR. FRANK C. WEST, for plaintiffs in error.

Mr. William L. Boatright, Attorney General, Mr. Otto Friedrichs, Assistant, Messrs. Quiat, Ginsberg & Quiat, for defendants in error.

*In Department.*

Mr. Justice Butler delivered the opinion of the court.

The Industrial Commission awarded compensation to L. Forest Smart and R. M. Hazelton upon their separate claims against M. S. Radetsky and the insurance carrier, Zurich General Accident and Liability Insurance Company, Limited. The claimants were injured while in the employ of Radetsky. In the district court the two cases were consolidated and the awards were affirmed. Both the claimants and the insurance company contended before the commission and in the district court that the risk was not covered by the insurance policy, and, therefore, that the insurance company is not liable at all, but that Radetsky, not having taken out insurance covering the risk, is required to pay 50 per cent additional compensation, as provided in C. L. §4401, as amended in 1923 (S. L. '23, c. 201, §7). The commission and the court having ruled against them, they renew the contention in this court.

The schedule of statements, made a part of the insurance policy, contains the following clauses:

"3. (a) Locations of all factories, shops, yards, buildings, premises, mines or other work-places of the assured to which this policy shall apply, by county and town or city, with street and numbers, are as follows: 438 Larimer street, Denver, Colo., and elsewhere in the state of Colorado."

"3. (b) General business operation of assured at the places named in part (a) hereof including all operative management and superintendence, the making of repairs and ordinary alterations for the maintenance of assured's buildings and plants at said places in good

condition and the repair and renewal of assured's existing mechanical equipment therein, as follows: Junk dealers—shop and outside (excluding building wrecking) including drivers, chauffeurs and their helpers No. 8262."

"3. (i) Other Business Operations.—If the assured does any work at the places named in part (a) hereof other than as described in part (b) the policy shall cover such work and the assured shall pay therefor a premium computed at the company's rates filed with and approved by the Industrial Commission and applicable to said work."

The same provisions were in policies issued to Radetsky by the Zurich company for several years prior to the issuance of the policy before us. During all that time, and for years prior thereto, Radetsky was engaged in the same business on a large scale, and carried on his operations in the same manner, which, according to the testimony of several witnesses, is the customary manner in which all large junk dealers in this state carry on their business. Buying abandoned plants of machinery and dismantling, or junking, them for the purpose of securing the iron and other metals and the machinery, constitute a large part of the business.

An abandoned sugar plant at Lamar was for sale. About 85 per cent of its value was in iron and other metals. In the ordinary course of his business, Radetsky bought it, agreeing to remove it, building and all, from the place where it stood. The building that enclosed the machinery was constructed principally of steel, concrete and brick. A metal tank was fastened to the second floor with angle irons. Smart was taking one of the angle irons off the tank, preparatory to removing the tank from the building, and while thus employed he fell through the floor and was injured. Hazleton was loading upon a railroad car an iron column, or pillar, that had been detached from the building. It fell upon him and injured him.

96

Counsel for the plaintiffs in error say: "The principal issue in this case is, when an employer engages in several different and distinct lines of business and takes out one policy of insurance which covers and purports to cover only one of those lines of business, is the insurance company to be held liable for compensation and benefits due employees engaged *exclusively* in that line of business excluded by the policy?" They also say that "The defendant in error M. S. Radetsky was *exclusively* engaged in the business of 'building wrecking,' and not engaged in the business of a 'junk dealer,' at Lamar at the time of the two accidents in this case."

It seems clear to us that at the time of the accidents the employees were not engaged exclusively in building wrecking. It seems equally clear that Radetsky was not then engaged exclusively in that business. Viewing the facts in the light most favorable to the plaintiffs in error, and assuming that Radetsky was engaged there in two kinds of business, namely, the junk business and the building wrecking business—the latter was merely incidental to the former—the two claimants, at the time they were injured, were employed in the former business. If dealing in old machinery constitutes second-hand machinery business, not junk business, clause 3 (i), supra, covers such risk.

Even if the claimants, at the time of the accidents, were engaged in wrecking the building, the risk would be covered by the policy. Clause 3 (i), supra, provides that if the assured does any work at the places named in part (a) "other than as described in part (b)," the policy shall cover such work, and the assured shall pay therefor a premium computed at the company's rates filed with, and approved by, the Industrial Commission and applicable to said work. Building wrecking is work "other than as described in part (b)." So, also, the work of dealing in junk, *including* (as an incident thereto) building wrecking, is work other than dealing in junk, *excluding* building wrecking. Clause 3 (i) does

not say "If the assured does any work, *except building wrecking,* other than as described in part (b)," etc., but says "If the assured does *any work* * * * other than as described in part (b)," etc.

The company's agent who solicited the business assured Radetsky, when he delivered the first policy, to him, that clause 3 (i) covers the work of dismantling plants. The company's general agent testified that they generally inserted the nearest description which fittted the general business of the party securing insurance; that at the end of the year they determined, from the various facts that came to their knowledge and from their audits and examinations, the rate to be charged, and that if the assured wrecked any buildings they charged him the additional premium under clause 3 (i). So it seems that, in construing the policy, the company's soliciting agent, its general agent, and this court are in accord.

Counsel on both sides, in preparing their briefs, have paid no attention to our rule No. 42. A failure to comply with that rule may result in our striking briefs from the files.

The judgment is affirmed.

MR. JUSTICE ADAMS, sitting for MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE MOORE and MR. JUSTICE BURKE concur.